GOTHARD, Judge.
This appeal is from judgment dismissing a worker’s suit against his employer for worker’s compensation benefits and for penalties and attorney’s fees.
Richard A. Lemoine was employed by Parish Tire & Wheel as a mechanic in 1985 and allegedly injured his back on the job, on or about April 26, 1985. Allegedly, Lemoine continued to work for at least two weeks, then announced that he was stopping work until something was done about his back. Lemoine also alleges he was fired on the spot. On June 3 his wife notified State Farm, the company’s compensation carrier, of the injury. Apparently there was a dispute and the parties submitted the claim to the state office of *912 worker’s compensation. Payments did not begin until October, 1985; however, it was stipulated that benefits of $248 per week were paid for a period from “date of the accident through October 23, 1987, when benefits were reduced to $125.06 per week,”[1] along with medical payments of $6,486.06. The supplemental benefits were continued to date of trial, November 24, 1987.
Lemoine filed suit on May 27,1986, alleging total and permanent disability and seeking maximum compensation payments. He also demanded penalties and attorney’s fees for the employer’s firing him for having asserted a worker’s compensation claim and for the employer’s arbitrary failure and refusal to pay compensation. The trial judge found in favor of the employer and dismissed the claimant’s suit on grounds of his having failed to prove disability due to a work-related accident. In his reasons for judgment the judge stated that a videotape introduced at trial indicated Lemoine had no difficulty bending, stooping, and squatting, contrary to his allegations and demeanor at trial.
The plaintiff raises two issues: whether the judge erred in finding that the plaintiff had failed to prove he was injured on the job and was disabled; and whether he erred in failing to find that the plaintiff was fired for filing a worker’s compensar tion claim.

Disability Due To A Work Related Injury

Lemoine testified that his injury occurred when he and a helper were attempting to remove the transmission from a large truck. They had taken out the floorboards and placed a jack under the transmission. The helper inadvertently pulled the jack out so that Lemoine, who was seated above in the cab and was holding the transmission by the end of the chain that was around it, was pulled abruptly forward. Lemoine stated that he reported being hurt to his employer, Bill Boada, and to his foreman. A couple days later he went to see Dr. Keith D. Larkin, who gave him a “paper” stating he could not work. Lem-oine gave the slip to Boada who told him he had to keep working because the shop was filled with work. Boada refused to let him stop working after a second visit to Dr. Larkin. A few days later Lemoine told Boada he wasn’t going to work any more until his back was better. Boada then told him to turn in his uniforms and pick up his tools. Lemoine’s former wife called the compensation carrier for him and was told that the accident had not been reported. The only witness to the accident was the helper, whose name he did not remember and who worked there only a short time. Evelyn Lemoine, his present wife, testified that she was living with the plaintiff then and he was in constant, sometimes excruciating pain following the accident. She stated that he is still in pain and unable to do housework or gardening. After attempting to mow the lawn he was in bed three days.
Other than copies of reports by Dr. Lar-kin, who treated Lemoine through August, 1985, the deposition of Dr. S. Daniel Seltzer, Jr. taken on November 11, 1987, the plaintiff offered no further evidence.
The record does bear out the existence of a back problem, whether or not job-related. Dr. Gordon Nutik, who examined the plaintiff on three occasions for the defendants, testified that he had “some type of degenerative disc at the L-5 sacral level” that would restrict him from work that included heavy lifting with repeated bending. In his opinion Lemoine was retrainable for bench work as a mechanic and could tolerate eight hours of standing and sitting.
Dr. Seltzer, the treating physician from May, 1986 through October, 1987, testified by deposition that he felt Lemoine had a herniated disc with nerve damage but did not propose surgery. He stated that Lem-oine’s symptoms had remained the same throughout the treating period, constant low back pain occasionally radiating into the legs. The pain varied in intensity and location but at no point was described as *913 “agonizing”, with neither significant improvement nor significant deterioration. He had encouraged Lemoine to increase his activities beginning in May, 1987, but not to return to his previous job. He felt he should carry or lift no more than 20 pounds. A bench job where he was free to sit and stand but not stoop, squat, kneel or bend over as an integral part of the job would fit his restrictions.
In a worker’s compensation case the claimant has the burden of proving his disability and the causal relation between it and an accident by a preponderance of the evidence. Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980). In the case before us, Drs. Larkin, Seltzer, and Gordon Nutik (the defendants’ examiner) all found that the claimant had low back pain; however, only the claimant’s testimony supports the occurrence of an accident on the job. While the defendants did not call Bill Boa-da or offer other evidence to refute Lem-oine’s testimony as to the accident itself, they submitted evidence casting suspicion on his assertions of the extent of his disability and his credibility. Although the court must accept as true the uncontradict-ed testimony of a witness who is a party, this is not so when the record reveals circumstances casting suspicion on the reliability of the testimony. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Jones v. Alexander, 399 So.2d 216 (La.App. 2nd Cir.1981), writ denied 400 So. 2d 1383 (La.1981).
Lemoine denied having had any previous back injury of any duration when question by his own physician, Dr. S. Daniel Seltzer, and by Dr. Gordon Nutik, who examined him for the defendants on three occasions. He told Dr. Nutik that he had pulled a muscle several years earlier but did not lose time at work. At trial he repeated the same information on direct examination. On cross examination he admitted having been hospitalized for traction but denied having filed suit against his employer for compensation. The defendants refuted his denial by introducing into evidence the record of a suit filed by Lem-oine in 1978 in the 24th Judicial District Court against Ameron Automotive (Wool-co) for a back injury incurred on the job. The record contains a judgment signed by Judge Floyd Newlin on December 11, 1978 incorporating a compromise between the parties and reflecting that Lemoine was present.
Another damaging item is a videotape of Lemoine performing activities in the yard of his home. The tape was filmed by Michael Breaux, who observed Lemoine on July 20, 22, and 23, 1987. Breaux testified to the circumstances under which he made the film and showed the tape in the courtroom. The plaintiff was seen attempting to start a lawn mower for about six minutes. He was able to squat, bend, and pull the cord of the mower, contrary to his own testimony and to the instructions of his physician, Dr. Seltzer. Activity around a raised pool lasted about ten minutes and involved bending over and twisting. The last segment showed Lemoine working under the hood of a car. He was also shown getting in and out of the passenger seat of a car with ease. Dr. Nutik was questioned as to the inconsistencies between his examination findings on September 9, 1987 and the video tape activities. He testified as follows:
... The patient was noted to be bending repeatedly at his waist to the point where the lumbar spine flexed to about seventy degrees and that is why I reported some of my clinical findings in degrees, and it was difficult to see the man’s hand on the tape at times, but it was easy to determine that the forward flexion was seventy degrees and on my clinical examination, he could only get to twenty degrees. He was able to squat down. He was working a lawn mower. I noticed the patient repeatedly bending his back and extending his back while pulling the lawn mower. He was able to do that at least ten times. He was able to get up and down quickly. I was able to observe him doing — at the time of my examination, I observed the patient had difficulty pushing himself out of the seat, and I saw the man going up and down several times on this video tape. *914 The patient was also seen working in a raised swimming pool and he was using some type of brush in which he repeatedly twisted his back and bent over to the side while washing in the pool.... I would have to conclude that the low back motion noted on the video tape was much more than the patient had allowed during my repeated examinations in this office, and would tend to make me believe the patient had a great (sic) range of motion in the low back....
Counsel for the appellant argues that the jurisprudence has held that videotapes must be used with caution because they fail to show rest periods, to show whether the subject is suffering pain, or to show the after effects of the activity. Glover v. Southern Pipe. & Supply Co., 408 So.2d 352 (La.App. 4th Cir.1981), writ denied 412 So.2d 86 (La.1982). Counsel points out that the plaintiff had admitted that he was doing some light work on the advice of his physician. He did no heavy lifting, the activity was of short duration and Lemoine probably rested afterward. He argues further that the tape was made four months prior to trial and that at the time of trial Lemoine testified he was having difficulty bending, stooping, and lifting.
In the Glover case a movie showed the plaintiff picking up and carrying only an armful of clothes in a small plastic basket. He was bent over for a few seconds only. The court held that the film was insufficient to negate his claim of a back disability. The court in Knott v. Welltech, Inc., 428 So.2d 1221 (La.App. 3rd Cir.1983), another plaintiff with a disc problem was shown moving sacks of crayfish to a scale and table. The court found the movie was not significant because the 51 seconds of activity was the only activity seen in four days of observation and was not strenuous.
Unlike the activities shown in Glover and Knott, Lemoine’s working over the lawn mower and automobile engine involved sustained bending. Further, his movements were of normal speed and fluidity. The judge stated in his reasons for judgment that, “The claimant, during the trial, displayed physical capacities inconsistent with that displayed in the videotape.” His evaluation was supported by the testimony of Dr. Nutik, who had examined Lemoine less than two months before trial, on September 9, 1987.
As to the time lapse between the filming in late July and the trial in late November, we find that Lemoine’s treating physician’s testimony refutes the plaintiff’s argument. Dr. Seltzer’s deposition was taken on November 11, 1987 and he had seen Lemoine on October 26, 1987. He reported that on that date, “My notes indicate that his condition had stabilized, that there was neither improvement, nor was there deterioration, either in his symptoms or in his physical examination.” No testimony of the plaintiff reflected a marked deterioration of his condition during the month before trial.
A trial court’s factual findings as to disability are entitled to great weight and are not to be disturbed except upon a showing of manifest error. Hookfin v. Schwegmann Bros., Etc., 398 So.2d 1218 (La.App. 4th Cir.1981). In the case before us the credibility of the plaintiff was crucial to a determination of disability. We find nothing in the record to negate the judge’s evaluation of the evidence, including the videotape.
The judgment and reasons for judgment are silent as to the plaintiff's demand for penalties for having been fired because of filing a compensation claim; therefore, that claim is deemed denied. Serrate v. Serrate, 472 So.2d 137 (La.App. 5th Cir.1985). The plaintiff argues that the judge erred in failing to find in his favor on the demand; however, credibility is again an overriding factor since Lemoine provided the only testimony. In light of evidence casting doubt upon Lemoine’s credibility, we find no error in the judgment as to its implied denial of that claim.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.

. Supplemental benefits were initiated after the treating physician released Lemoine for work on a restricted basis and rehabilitation experts had determined employment was available that fit within the restrictions.